**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DISTRICT**

CYNTHIA HORTON,                                    *

               Plaintiff,                     *

               v.                              *          Civil Action No. AW-06-3251

CERTIFIED ROOFING SYSTEMS AND          *
CONTRACTING CORPORATION, *et al.*,
                                     *

               Defendant.                   *

                                    ****

<u>**MEMORANDUM OPINION**</u>

      Plaintiff Cynthia Horton ("Horton" or "Plaintiff") brings this action against Defendants

Certified Roofing Systems and Contracting Corporation ("CRS") and James Hess ("Hess").  On

January 17, 2007 CRS filed a Motion to Dismiss or, in the Alternative, For Summary Judgment [4]

Plaintiff's Complaint.  On February 7, 2007, Plaintiff filed her First Amended Complaint [7] adding

Hess as a party to this suit.  Subsequently, Hess filed a Motion to Dismiss or, in the Alternative, For

Summary Judgment [9].  On February 28, 2007, CRS filed a Renewed Motion to Dismiss or, in the

Alternative, For Summary Judgment [10].  The Court has reviewed the entire record, as well as the

pleadings with respect to the instant motions.  On August 13, 2007, the Court held a hearing

concerning the motions and heard from all the parties.  Having considered the arguments of Plaintiff

and Defendants, and for the reasons articulated at the hearing and briefly discussed below, the Court

will **DENY-AS-MOOT** CRS's motion to dismiss or, in the alternative, for summary judgment,

**GRANT** Hess's motion to dismiss or, in the alternative, for summary judgment, and **GRANT-IN-**

**PART** and **DENY-IN-PART** CRS's renewed motion to dismiss or, in the alternative, for summary

judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Horton started working for CRS from August 2002 until October 28, 2004.  During her employment, she handled all of the company's accounts payable, billing and payroll, until she became a production manager.  In late September of 2004, Plaintiff was diagnosed with Multiple Sclerosis ("MS").  Plaintiff claims that immediately after her diagnosis, CRS regarded her as disabled, reporting slurred speech, and noticing other visible symptoms.  Plaintiff alleges that she is otherwise qualified to perform all of the essential functions of her job.  Plaintiff avers that, beginning in late September 2004 and continuing through October 28, 2004, CRS violated the ADA by intentionally discriminating against her after regarding her as disabled. Plaintiff further claims that CRS's discriminatory acts included harassment by illegally creating a hostile work environment, including threatening illegal action to not accommodate someone disabled by MS, by threatening that they could not continue to employ someone disabled by MS, and finally by illegally terminating her because of her disability

On September 15, 2006, Plaintiff received a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC").  On November 30, 2006, Plaintiff commenced this action by filing a six-count complaint against CRS alleging "(1) Count One:  Unwelcome Harassment Creating a Hostile Work Environment for a Covered Person with a Perceived Disability in Violation 42 U.S.C. §12101, *et seq*.; (2) Count Two:  Wrongful Discharge of a Covered Person with a Perceived Disability in Violation of 42 U.S.C. §12101, *et seq*.; (3) Count Three:  Failure to Accommodate a Covered Person With a Perceived Disability in Violation of 42 U.S.C. §12101, *et seq*.; (4) Count Four:  Wrongful Termination (Common Law); (5) Count Five:  Intentional Infliction

of Emotional Distress; and (6) Count Six: Civil Conspiracy in Violation of 42 U.S.C. 1985 (3)."
(Pl.'s Compl. at 6-9). Subsequently, CRS filed a motion to dismiss Plaintiff's complaint or, in the alternative, for summary judgement.

On February 7, 2007, Plaintiff filed a six-count Amended Complaint, adding James Hess, Plaintiff's direct supervisor, as a party to this action, alleging "(1) Count One:  Defendant CRS Engaged in Disability-Related Harassment and Created a Hostile Work Environment for Plaintiff, a Covered Person Regarded as Disabled in Violation of 42 U.S.C. §12101, *et seq*.; (2) Count Two: Wrongful Discharge of a Covered Person Regarded as Disabled Regarded as Disabled [sic] in Violation of 42 U.S.C. §12101, *et seq*.; (3) Count Three: Failure to Accommodate a Covered Person Regard [sic] as Disabled in Violation of 42 U.S.C. §12101, *et seq*.; (4) Count Four: Wrongful Termination (Common Law); (5) Count Five: Intentional Infliction of Emotional Distress; and (6) Count 6: Civil Conspiracy in Violation of 42 U.S.C. 1985(3)." (Pl.'s Am. Compl. at 4-8). Currently pending are CRS's Motion to Dismiss or, in the Alternative, For Summary Judgment [4], Hess's Motion to Dismiss or, in the Alternative, For Summary Judgment [9], and CRS's Renewed Motion to Dismiss or, in the Alternative, For Summary Judgment [10]. The motions are ripe and now ready for the Court's review.

## STANDARD OF REVIEW

### *Motion to Dismiss*

A court should deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the

well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true.  *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)").  Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged."  *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Therefore, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts to support a cognizable legal theory.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

***Motion for Summary Judgment***

Where matters outside the pleadings are considered by the court, however, a defendant's motion to dismiss will be treated as one for summary judgment under Rule 56.  *See* Fed.R.Civ.P. 12(b),(c).  Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment if it demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

323-25 (1986).  In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the non-moving party's case.  *Celotex*, 477 U.S. at 325. When faced with a motion for summary judgment, Rule 56(e) requires the non-moving party "to go beyond the pleadings" and show the existence of a genuine issue for trial, by way of affidavits, deposition testimony, or answers to interrogatories.  *Id.* at 324; *see also Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

Federal Rule of Civil Procedure 15(a) states that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."  The law is clear that a motion to dismiss is not a responsive pleading for purposes of Rule 15(a). *Smith v. Blackledge*, 451 F.2d 1201, 1203 n. 2 (4th Cir.1971); 6 Charles A. Wright, et al., Federal Practice and Procedure § 1483 (2d ed.1990).  Therefore, because Plaintiff has filed an Amended Complaint, as she was permitted as a matter of right, the Court will **DENY-AS-MOOT** CRS's motion to dismiss, or in the alternative, for motion for summary judgment.

### *Defendant Hess's Motion to Dismiss, or in the Alternative, for Summary Judgment*

In her First Amended Complaint, Plaintiff asserts Counts Five (Intentional Infliction of Severe Emotional Distress) and Six (Civil Conspiracy) against Hess, individually.  Subsequently, Hess filed a motion to dismiss Plaintiff's claims against him.  The Court will discuss each in turn.

Count Five: Intentional Infliction of Severe Emotional Distress

In Maryland, four elements must be sufficiently pled to state a claim for relief under intentional infliction of emotional distress ("IIED"): (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Harris v. Jones*, 380 A.3d 611, 614 (Md. 1977). All elements must be satisfied completely before a cause of action will lie and responsibility for the initial determination of whether the elements have been satisfied belongs to the trial judge. *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1063 (Md. 1986) (citations omitted). IIED claims are "rarely viable in a case brought under Maryland law." *Robinson v. Cutchin*, 140 F.Supp.2d 488, 494 (D. Md. 2001) (internal references omitted).

Whether Hess's conduct may reasonably be regarded as "extreme and outrageous" is, in the first instance, a question for the Court to resolve. Where reasonable persons may differ, the jury must determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. *Harris*, 380 A.3d at 615. For conduct to meet the test of "outrageousness," it must be "so extreme in degree as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 614.

Here, Plaintiff alleges that Hess's conduct was extreme and outrageous (Pl.'s Am. Compl. at 44). She claims that: (1) she was met with unreasonable responsibility in light of her diagnosis of MS; (2) she was told that she needed to catch up with the billing within the week of her return; (3) she was given the task of cleaning the kitchen, although, prior to her departure, everyone was responsible for cleaning up after themselves; and (4) she was told that she needed to train everyone on service management (Pl.'s Am. Compl. at 43). The Court finds that Plaintiff's allegations, even

accepted as true, do not meet the threshold for extreme and outrageous conduct required to state a

claim for IIED under Maryland law.

Maryland courts have emphasized that the elements of an IIED claim are difficult to satisfy

and that "major outrage is essential to the tort; the mere fact that the actor knows that the other will

regard the conduct as insulting or will have h[er] feelings hurt, is not enough." *Kentucky Fried*

*Chicken Nat'l Management Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992).  No reasonable jury

could conclude that the conduct here satisfies the "extreme and outrageous" prong of the common

law tort.  Accordingly, the Court will **GRANT** Hess's motion to dismiss Plaintiff's IIED claim

against him.

Count Six: Civil Conspiracy

Under Maryland law, "[a] civil conspiracy is a combination of two or more persons by an

agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish

an act not in itself illegal, with the further requirement that the act or the means employed must

result in damages to the plaintiff." *BEP, Inc. v. Atkinson*, 174 F.Supp.2d 400, 408 (D. Md. 2001)

(citing *Green v. Washington Sub. San. Comm'n*, 259 Md. 206, 269 A.2d 815, 824 (1970)).  A clear

agreement to conspire is necessary because the "[i]ndependent acts of two wrongdoers do not make

a conspiracy." *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073,

1076 (4th Cir. 1981).  The conspired unlawful act does not have to be criminal, but requires "the

violation of a legal right committed knowingly to create a cause of action." *BEP*, 174 F.Supp.2d at

409 (citing *Columbia Real Estate Title Ins. Co. v. Caruso*, 39 Md. App. 282, 384 A.2d 468, 472

(1978)).

A civil conspiracy provides a means of holding a co-conspirator liable for acts committed

in furtherance of the conspiracy by another member. *Mackey v. Compass Marketing, Inc.*, 892 A.2d 479, 485 (Md. 2006). A civil conspiracy is (1) a combination of two or more persons, (2) by an agreement or understanding (3) to commit an unlawful act or use unlawful means to commit an act not otherwise unlawful, that (4) result in damages to the plaintiff. *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (internal citation omitted). Civil conspiracy will not support a separate cause of action in the absence of "other tortious injury to the plaintiff." *Mackey*, 892 A.2d at 485; *Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d 814, 822 (D. Md. 2005) ("Conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff." ). As explicitly stated by the Maryland Court of Appeals, it is "improper pleading to allege ... conspiracy in [a] separate count []." *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 110 n. 6 (Md. 2000).

It is well established in Maryland that "civil conspiracy is not capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Mackey v. Compass Mktg.*, 892 A.2d 479, 485 (Md. 2006) (citations and internal quotation marks omitted). It is even considered "improper" to plead civil conspiracy in a separate count of a complaint as if it were a "cause[ ] of action independent of an underlying tort." *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 110 n. 6 (Md. 2000). Conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff. *Estate of White*, 109 F.Supp.2d at 428 (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assoc.*, 336 Md. 635, 650 A.2d 260, 265 n. 8 (1994)). Here, because the Court dismisses Plaintiff's IIED claim, plaintiff no longer has a separate cause of action against Hess. Therefore, as civil conspiracy cannot be pled as an independent cause of action, Hess' motion to dismiss is **GRANTED** as to Count Six.

Alternatively, Plaintiff's civil conspiracy claim is barred by the intracorporate conspiracy

doctrine.  It is well-settled under the intracorporate conspiracy doctrine that an entity cannot conspire with itself.  *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985).  It is impossible for a corporation to conspire with its employees who were acting within the scope of their agency/authority.  *Marmott v. Maryland Lumber Co.*, 807 F.2d 1180 (4th Cir. 1986).  Although a corporation is considered a legal entity, it can only act through its agents.  Thus, the authorized actions of corporate employees are attributed to the corporation.

Although two exceptions to the intracorporate conspiracy doctrine are recognized.  Plaintiff fails to allege, nor could she make a proffer of the applicability of either exception: (1) that Hess has an "independent personal stake in achieving the corporation's illegal objective."  *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974) or (2) that his actions were unauthorized.  *Hodgin v. Jefferson*, 447 F. Supp. 804, 807 (D. Md. 1978) (finding that it may be possible to state a claim as to inter-employee civil conspiracy when the employees are acting outside the scope of their authority, but this is not the case alleged here).  Accordingly, the Court will **GRANT** Hess' motion to dismiss Plaintiff's civil conspiracy claim.  Furthermore, as the Court **GRANTS** Hess' motion to dismiss both claims that Plaintiff alleges against him, the Court finds that Hess is no longer a party to this action and terminates him from this suit.

***Defendant CRS's Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment***

For the same reasons why Plaintiff's Amended Complaint fails to allege Counts Five and Six for IIED and Civil Conspiracy, respectively, discussed *supra*, against Hess, the Court will also dismiss these claims against Defendant CRS.  The Court will now discuss Plaintiff's four remaining claims against CRS, as alleged in Plaintiff's Amended Complaint.

<u>Count One: Disability Related Harassment, Hostile Work Environment in Violation of the ADA</u>

To state a hostile work environment claim under the ADA, a plaintiff must establish that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *Fox v. General Motors Corp.*, 247 F.3d 169, 175-76 (4th Cir. 2001).

Here, Plaintiff states a claim for relief based on each prong of the analysis set forth in *Fox*. In her Amended Complaint, she specifically alleges: (1) "Plaintiff suffers from Multiple Sclerosis (MS) which substantially limits one or more of her life activities, including waking and talking, as defined by the Americans with Disabilities Act (ADA)" (Pl.'s Am. Compl. at 11) and "Plaintiff was first diagnosed by her physicians with MS in late September of 2004 after a period of several months of experiencing various curious symptoms and increasing symptoms which finally resulted in the diagnosis of MS.  During the period immediately and continuing thereafter, Defendant CRS came to regard Ms. Horton as disabled, reporting slurred speech, among other visible symptoms."  (Pl.'s Am. Compl. at 13); (2), (3), (4), and (5)  "[S]he was singled out with threats of potential job loss from CRS because of her actual and perceived disability from MS; CRS notified her of its reluctance or refusal to reasonably accommodate any future symptoms of her newly diagnosed disability; CRS assigned unreasonably greater job responsibilities, immediately after her return to work; and CRS made several unsubstantiated allegations of insubordinations, and then used those pretextual allegations as a basis for termination."  (Pl.'s Am. Compl. at 18).

Defendant disputes the factual adequacy of Plaintiff's Amended Complaint, claiming that

it revolves primarily around the inconsistencies between her original Complaint and her Amended Complaint, which "flatly contradict her original assertions." (Def. CRS's Renewed Mot. at 2). However, on a motion to dismiss, in considering whether Plaintiff pleads an adequate factual predicate for her claim, the Court must accept the facts as alleged by the plaintiff as true and "liberally construe []" the complaint in her favor. *Jenkins v. McKeithen*, 395 U.S.411 (1969); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (explaining that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). While the Court has some reservations as to whether Plaintiff has pled a sufficient basis for the fourth element, the "severe and pervasive" prong, particularly in view of the fact that all of the essential events took place within a period of about a month, the Court nevertheless finds that Plaintiff has pled a cognizable claim.[1] Accordingly, the Court will **DENY** CRS's motion to dismiss Plaintiff's Amended Complaint as to Count One. Furthermore, the Court will also **DENY** Defendant's alternative motion for summary judgment, as there has not yet been any discovery and the Court believes a motion for summary judgment is premature.

Count Two: Wrongful Discharge in Violation of the ADA

A plaintiff establishes a prima facie wrongful discharge claim under the ADA against a covered entity by demonstrating that: (1) [s]he is within the ADA's protected class; (2)[s]he was discharged; (3) at the time of [her] discharge, [s]he was performing the job at a level that met [her] employer's legitimate expectations; and (4)[her] discharge occurred under circumstances that raise

---

[1] While the Court agrees with Defendant's argument that a countervailing affidavits was required by Plaintiff, nevertheless, the Court believes that there is sufficient allegations set forth and proffered to survive a motion to dismiss.

a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir.2001) (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir.1995)).  The Court agrees with Defendant that this essentially is Plaintiff's core claim.  In considering whether Plaintiff pleads an adequate factual predicate for this claim, the Court accepts the facts as alleged by plaintiff as true and "liberally construes" the complaint in her favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (explaining that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief").

Here, Plaintiff has sufficiently pled adequate facts to establish a prima facie case for a claim for wrongful discharge in violation of the ADA: (1) "Plaintiff was diagnosed with MS."  (Pl.'s Am. Compl. at 23); (2) "Plaintiff was terminated on October 28, 2004." (Pl.'s Am. Compl. at 25); (3) "Plaintiff had never been disciplined by CRS prior to her diagnosis, and she had never received any evaluations indicating that she was not performing to employer's expectations." (Pl.'s Am. Compl. at 23); and (4) "CRS unlawfully terminated Plaintiff after she was diagnosed with MS and she asked for a reasonable accommodation, particularly in view of the fact that Defendant regarded her diagnosis to be a disability." (Pl.'s Am. Compl. at 26).

Again, Defendant alleges that the factual basis of Plaintiff's Amended Complaint are inadequate because her original Complaint is contrary to the factual allegations of her Amended Complaint.  However, on a motion to dismiss, as discussed *supra*, the Court's role is to accept Plaintiff's assertions as true.  Accordingly, the Court will **DENY** Defendant's motion to dismiss Plaintiff's wrongful discharge claim in violation of the ADA.  Furthermore, for the reasons stated

*supra* and articulated at the motions hearing, the Court will **DENY** Defendant's alternative motion for summary judgment.

Count Three: Failure to Accommodate in Violation of the ADA

The ADA expressly states that the failure of an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee" is a form of disability discrimination. 42 U.S.C. § 12112(b)(5)(A). To set forth a claim for a failure to accommodate claim, a plaintiff must state that (1) she was an individual who had a disability within the meaning of the statute; (2) the employer had notice of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *Rhoads v. Fed. Deposit Ins. Co.*, 257 F.3d 373, 387 n. 11 (4th Cir.2001).

In order for Plaintiff to set forth a cognizable failure to accommodate claim, she must not only allege that CRS failed to engage in the interactive process to find reasonable accommodation, but that its failure to engage "resulted in the failure to identify an appropriate accommodation for [Plaintiff]." *Scott v. Montgomery County Gov't*, 164 F.Supp.2d 502, 508 (D. Md. 2001) (*quoting Walter v. United Airlines*, 2000 WL 1587489, at *4 (4th Cir. Oct. 25, 2000)). "[T]he ADA does not require an employer to provide the specific accommodation requested ..., or even to provide the best accommodation, so long as the accommodation ... is reasonable." *Scott*, 164 F.Supp.2d at 509.

Here, assuming *arguendo*, that Plaintiff sets forth the first and second prongs, Plaintiff fails to articulate the third and fourth prongs for a failure to accommodate claim in violation of the ADA. Plaintiff alleges that "[s]hortly upon her return to work and after she had informed her employer of

her diagnosis, Plaintiff was questioned about the need for 'special accommodations,' and soon thereafter she was notified of CRS's inability to provide reasonable accommodations for an employee with a debilitating disease like MS." (Pl.'s Am. Compl. at 31).  Even accepting the facts as alleged by Plaintiff as true, Plaintiff fails to allege that with reasonable accommodation she could perform the essential functions of the position and that CRS refused to make such accommodations. Plaintiff further alleges that "[o]n October 22, 2004, and October 27, 2004, after being disciplined for her alleged insubordination, Ms. Horton reminded her superiors that she was still coping with her recent diagnosis of MS and requested a meeting with the principals of the company concerning her condition.  Her request for discussion regarding her condition was never acknowledged or addressed by Defendant.  Shortly after her request was made, Plaintiff was terminated by CRS." (Pl.'s Am. Compl. at 31-33).  Here, Plaintiff's purported accommodation was for her to meet with the principals of the company for alleged insubordination and not her disability.[2]

Accordingly, Plaintiff fails to state which accommodations she requested and which were denied.  Therefore, Plaintiff fails to set forth a cognizable claim for a failure to accommodate claim in violation of the ADA.  Nevertheless, the Court will **DENY** Defendant's motion to dismiss without prejudice as to Count Three of Plaintiff's Amended Complaint and allow Plaintiff an opportunity to amend her First Amended Complaint and re-allege this claim by setting forth facts, specifically as to what accommodations she requested and Defendant denied.

Count Four: Wrongful Termination

Plaintiff may not file a common law claim for wrongful termination under Maryland law where, as here, she has a statutory remedy.  *Hart v. Harbor Court Assoc.*, 46 F.Supp.2d 441, 444 (D.

---

[2] At the oral hearing, Plaintiff represented that she intended to meet with Defendant to discuss accommodations but never got the opportunity.

Md. 1999), 42 U.S.C. § 12101, *et seq*.  It is well established that Maryland law does not recognize a claim for wrongful termination when the statute setting forth the particular mandate of public policy contains its own remedy for vindicating the public policy violation in question.  *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179 (Md. 1989).  Here, Plaintiff's employment discrimination in question is prohibited by the ADA.  Since the ADA provides remedies for the allegedly wrongful action, Plaintiff may not proceed in this case with her claim of wrongful termination alleged in Count Four of her Amended Complaint.  *Makovi*, 561 A.2d 179; *Crosten v. Kamauf*, 932 F.Supp. 676, 686 n. 4 (D. Md. 1996).  Therefore, the Court will **GRANT** Defendant's motion to dismiss as to Plaintiff's common law claim for wrongful termination.

## CONCLUSION

For all the reasons articulated here and set forth in the hearing, the Court will **DENY-AS-MOOT** CRS's motion to dismiss, or in the alternative, for motion for summary judgment, **GRANT** Hess's motion to dismiss, or in the alternative, for motion for summary judgment, and **GRANT-IN-PART** and **DENY-IN-PART** CRS's renewed motion to dismiss, or in the alternative, for motion for summary judgment.  Specifically, the Court will **GRANT** CRS's motion to dismiss as to Count Four: Wrongful Termination (Common Law), Count Five: Intentional Infliction of Emotional Distress, and Count Six: Civil Conspiracy.  Furthermore, as the Court will **GRANT** Hess's motion to dismiss, and inasmuch as there are no other claims against him, he is no longer a party to this action.  Lastly, the Court finds that Plaintiff's only surviving claims, as alleged in her First Amended Complaint, are her Count One: Hostile Work Environment in violation of the ADA and Count Two: Wrongful Discharge in violation of the ADA of her Amended Complaint against CRS.  Accordingly, if Plaintiff wishes to maintain her Count Three: Failure to Accommodate in violation of the ADA

claim, Plaintiff is **DIRECTED** to re-allege her claim by filing a Second Amended Complaint within ten (10) days from the entry of this Memorandum Opinion and Order.  In the meantime, the Court will issue a scheduling order.  An Order consistent with this Memorandum Opinion will follow.

Date:   <u>August 14, 2007</u>                            _____/s/_____
                                                         Alexander Williams, Jr.
                                                         United States District Court Judge